UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ULISES VALDEZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, et al.,<br><br>Defendants. | Case No.: 12-04307-SBA (KAW)<br><br>ORDER RE: 6/12/2013 AND 6/14/2013 JOINT DISCOVERY LETTERS PERTAINING TO DEFENDANTS' REQUEST FOR PRODUCTION AND SUBPOENAS FOR FINANCIAL RECORDS<br><br>(Dkt. Nos. 42 & 43) |

Before the Court are the joint discovery letters filed by the parties on June 12, 2013 and June 14, 2013. (Dkt. Nos. 42 & 43). The June 12, 2013 Joint Letter ("6/12/13 Joint Letter") concerns Defendants The Travelers Indemnity Company of Connecticut (erroneously sued as The Travelers Indemnity Company, Travelers Property and Casualty Company of America, and the Travelers Insurance Company; collectively "Travelers") requests for Plaintiffs Ulises Valdez and Valdez & Sons Vineyard Management's financial information. The June 14, 2013 Joint Letter ("6/14/13 Joint Letter") concerns the May 9, 2013 and June 11, 2013 subpoenas for financial records that Defendants served on business entities associated with the plaintiffs. Plaintiffs have refused to produce financial information based on claims of privilege, privacy and relevancy grounds and claim that the requests are overly broad. Defendants argue that Plaintiffs' complaint directly places their financial condition at issue, rendering the requested records and information discoverable.

Upon review of the Joint Letters, the Court finds this matter suitable for resolution without oral argument pursuant to Local Rule 7-1(b). The Court finds the requested information largely discoverable, subject to the limitations as set forth below.

///

# I. LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), "[a] party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The information "need not be admissible at the trial" so long as it appears "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

Federal Rule of Civil Procedure 45 allows any party to serve a subpoena that commands a non-party "to produce documents, electronically stored information, or tangible things . . ." Fed. R. Civ. P. 45(a)(1)(C). Subpoenas are also subject to the relevance requirements of Rule 26(b), and therefore may command the production of documents which are "nonprivileged [and] . . . relevant to a party's claim or defense." *Soto v. Castlerock Farming & Transp., Inc.*, 1:09-CV-00701 AWI, 2011 WL 2680839, at *7 (E.D. Cal. July 8, 2011), quoting Fed. R. Civ. P. 26(b)(1).

This broad scope of relevant, discoverable information is limited by the responsibility of the parties to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the court may, "[o]n motion or on its own . . . limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

# II. BACKGROUND

Plaintiffs are Ulises Valdez and Valdez & Sons Vineyard Management, a corporation affiliated with Mr. Valdez. (Complaint, Dkt. No. 1, ¶ 2.) Plaintiffs were insured by Travelers from September 2007 to September 2008. (Compl., ¶ 8.)

In 2007, Plaintiffs entered into an agricultural lease with Bill and Debra Ernst ("Ernsts") to prepare, install and farm a vineyard in a discrete portion of the Ernsts' property. (Compl., ¶

14.) On or about February 11, 2010, the Ernsts filed a complaint ("*Ernst v. Valdez*" or "*Ernst* litigation") for trespass and damages against Plaintiffs, related to Plaintiffs' alleged errant cultivation beyond the borders of the leased property. (Compl., ¶¶ 13-14.) Believing themselves entitled to representation by Defendants, Plaintiffs informed Travelers of the charges against them and their dispute of the claims. (Compl., ¶ 15.) Defendants ultimately denied Plaintiffs' coverage under their insurance policy and refused to defend and indemnify them. (Compl., ¶ 19.) As a result, Plaintiffs retained their own legal representation in the Ernst litigation and, on December 7, 2011, entered into a settlement agreement with the Ernsts. (Compl., ¶¶ 22-24.) The agreement included a "right to buy-out" the remainder of Plaintiffs' lease, which the Ernsts subsequently exercised, terminating the remainder of the Plaintiffs' agricultural lease. (Compl., ¶ 24.)

On August 15, 2012, Plaintiff filed this action, alleging breach of contract and breach of the implied covenant of good faith and fair dealing. (Compl., Dkt. No. 1.) Plaintiffs seek attorneys' fees for litigation expenses incurred defending against the claims in *Ernst v. Valdez*, reimbursement of the amount paid in the settlement, lost profits under the agricultural lease with the Ernsts, and general and consequential damages including damages for Plaintiff Ulises Valdez's emotional distress. (Compl., ¶ 44.)

Plaintiffs allege that as a result of Defendants' failure to defend, indemnify, or otherwise provide "any assistance, communication, or protection" under Plaintiffs' insurance plan, they were forced to accept the Ernsts' offer of settlement because they "could not personally afford to defend against these claims and risk a substantial judgment against them which they would be unable to pay." (Compl., ¶¶ 22-25.)

On March 27, 2013, Travelers served Ulises Valdez and Valdez & Sons with Request for Production, Set 2, seeking discovery regarding their individual assets and income. (6/12/13 Joint Letter, Exs. A & B.) The parties met and conferred, but could not agree to what extent Plaintiffs' allegations placed their financial condition at issue and whether the requested financial documents would therefore be discoverable.

On June 12, 2013, the parties filed a joint letter in which Defendants request an order requiring Plaintiff Valdez & Sons to provide amended responses to Requests for Production Nos.

1  21-27, and an order requiring Plaintiff Ulises Valdez to provide amended responses to Requests
2  for Production Nos. 21-37. (6/12/13 Joint Letter, at 6.)

3   In addition, on June 14, 2013, the parties filed a second joint letter in which Defendants
4  request the enforcement of document subpoenas seeking financial information from seven third-
5  party entities affiliated with the Plaintiffs. (6/14/13 Joint Letter, at 1.) On May 9, 2013, Travelers
6  issued document subpoenas to 1) Adelina Valdez Trust; 2) Ulises & Adelina Valdez Family
7  Trust; 3) Valdez Family Winery; 4) Ulises Valdez Properties, LLC; 5) Ulises Valdez Trust; 6)
8  Valdez Family Limited Partnership; and 7) Silver Eagle Ranch, LLC. (6/14/13 Joint Letter, at 1.)
9  On June 11, 2013, Travelers issued amended document subpoenas to certain of these entities, and
10  also included a document subpoena to Umpqua Bank, by which it sought financial records
11  relating to Plaintiffs and the above third-party entities. (6/14/13 Joint Letter, at 1.) Plaintiffs have
12  not filed a motion to quash as Defendants have agreed to place the subpoenas on hold "so that the
13  parties could address this matter to the Court along with the related discovery dispute regarding
14  the requests for tax records and financial information from the party plaintiffs. (*See* Docket No.
15  42)." (6/14/13 Joint Letter, at 7.)

16   As both letters concern related discovery issues, the Court will address both in a single
17  order.

## III. DISCUSSION

### A. Requests for Production of Plaintiffs' Financial Documents

20   At issue is the extent to which the above allegations place Plaintiffs' financial situation in
21  controversy, rendering the information relevant for purposes of discovery, and waiving Plaintiffs'
22  claims of privilege and privacy.

23   The June 12, 2013 joint letter concerns each plaintiff's responses to Defendants' distinct
24  second set of requests for production. (6/12/13 Joint Letter, at 1.) As to Ulises Valdez,
25  Defendants allege deficiencies in his responses to Request Nos. 21-37. (6/12/13 Joint Letter, at
26  1.) For example, Defendants' Request No. 21 to Ulises Valdez seeks: "Any and all
27  DOCUMENTS that reflect or refer to assets YOU held at any time between January 1, 2010 and
28  the present." (6/12/13 Joint Letter, Ex. A.) Request Nos. 32-35 seek Plaintiff Ulises Valdez's

4

state and federal income tax returns and related documents. (6/12/13 Joint Letter, Ex. A.) In response to each disputed request, Plaintiff Ulises Valdez made the following identical objection:

> Plaintiff objects to this request on the grounds that it is vague, ambiguous, overbroad, and fails to describe a specific category of documents with reasonable particularity as required by FRCP 34(b)(1)(A). Plaintiff further objects to the request on the grounds that it seeks documents which are neither relevant to the claims or defenses herein nor reasonably calculated to lead to the discovery of admissible evidence. In addition, plaintiff objects to this request on the grounds that it seeks documents protected by plaintiff's right to privacy in confidential financial information and affairs. Finally, plaintiff objects to this request on the grounds that it seeks documents privileged and protected from disclosure by the federal and state Constitution and the laws of the United States and the State of California.

(6/12/13 Joint Letter, Ex. C.) Defendants contend that Ulises Valdez's objections are without merit, as he has put his financial condition at issue by alleging that he was forced to settle the Ernst case because he could not afford to litigate after Travelers denied his insurance claim.

Likewise, Defendants' Request Nos. 21-27 to Valdez & Sons Vineyard Management ("Valdez & Sons") seek similar information. For example, Request Nos. 21 and 22 seek financial records, federal and state income tax returns, profits and loss statements, bank account statements, loan and line of credit statements for the period of January 1, 2010 to the present. (6/12/13 Joint Letter, Ex. B.) Defendants also request information regarding ownership, cash flow net worth from the company. *Id.* As above, Valdez & Sons responded with identical boilerplate objections to all requests and provided none of the documents requested. (6/12/13 Joint Letter, Ex. D.)

1. Relevancy

As a preliminary matter, the parties disagree about the relevance of Plaintiffs' financial condition. Defendants assert that the Plaintiffs have placed their financial situation at issue by making the following claims: 1) that they did not have the funds to mount a proper defense in the *Ernst* action; 2) Travelers' declination of their tender of defense caused Ulises Valdez "significant mental suffering, anxiety, and severe emotional distress;" and 3) by claiming millions of dollars in potential lost profits for which Travelers is responsible. (6/12/13 Joint Letter, at 4.) Plaintiffs

counter that their financial situation is not at issue in the case and is therefore not relevant. *Id.* at 7.

The Court finds Plaintiffs' personal financial information relevant under Rule 26, as the majority of Plaintiffs' prayer for damages stem from allegations that they would not have agreed to the terms of the Ernst settlement if they had not been denied coverage by Travelers. The complaint specifically alleges that, as a result of being "forced" to settle the *Ernst* litigation, Plaintiffs accepted an unfavorable buy-back provision, and lost the remainder of their 25 year agricultural lease, along with the projected profits that would have been realized over the course of the term, because they were not financially willing or able to expose themselves to liability. (Compl., ¶¶ 24, 32.) By alleging damages that include the "loss of benefits under the Agricultural Lease...and other consequential damages," Plaintiffs have placed their financial condition at issue, thereby making Plaintiffs' financial statements, tax returns, and requested documents relevant for purposes of discovery.

Plaintiff Ulises Valdez's financial information is also relevant to his emotional distress claim. Courts have found that when emotional distress claims are alleged to be caused by financial loss, financial information is not only relevant but nonprivileged. *See Garcia v. Progressive Choice Ins Co.*, No. 11-CV-466–BEN, 2011 WL 4356209, at *3 (S.D. Cal. Sept. 16, 2011) (Where Complaint seeks damages that cover incidental and out-of-pocket expenses stemming from breach of contract and compensatory damages for emotional distress stemming from the bad faith claim, Plaintiff's financial information is relevant and claim is inconsistent with assertion of privilege.). As in *Garcia*, the requested financial information is relevant because it could reveal other factors, unrelated to the insurance claim, which may have contributed to Plaintiff Ulises Valdez's alleged emotional distress. *Id.*

Additionally, Plaintiff Ulises Valdez alleges that Defendants' actions caused him "significant mental suffering, anxiety, and severe emotional distress... over the potential damage to his business, his personal exposure to liability without any protection from defendants, and the fact that he was forced to enter into a settlement agreement to avoid significant personal financial exposure and the loss of his business." (Compl., ¶ 41.) Plaintiffs argue that only the "actual

financial losses" are relevant to the emotional distress claim. (6/12/13 Joint Letter at 8.) Plaintiffs are correct that their actual financial losses are sufficient to establish an emotional distress claim, but the full picture of their financial situation may reveal information relevant to Defendants' defenses against that claim. This may also shed light on the severity of the mental suffering Ulises Valdez claims resulted from the "potential" damages to his business and financial exposure, rather than just the "actual" losses. Since the requested information could uncover, for example, an alternate cause for Ulises Valdez's emotional distress, the requested information is relevant. *See, e.g.*, *Major v. Western Home Ins. Co.*, 169 Cal. App. 4th 1197, 1215 (2009) ("There is a proximate cause requirement for recovery of emotional distress damages in bad faith actions."). The financial information sought is therefore also relevant to one of Defendant's potential defenses, satisfying Rule 26(b)(1).

In light of the above, Plaintiffs' financial documents are relevant to the underlying action. Whether they are discoverable then turns on whether Plaintiffs' objections based on the tax return privilege and privacy may be overcome by Defendants' need to obtain this information based on the claims alleged in this case.

2. <u>Tax Return Privilege</u>

Since this action is in federal district court on the basis of diversity jurisdiction, the substantive law of California applies, including on matters of privilege. *See Conestoga Services Corp. v. Executive Risk Indem., Inc.,* 312 F.3d 976, 980–81 (9th Cir. 2002) (citations omitted); *Platypus Wear, Inc. v. K.D. Co., Inc.*, 905 F. Supp. 808, 811 (S.D. Cal. 1995) (state law governs law of privilege in diversity case); Fed. R. Evid. 501.

While there is no recognized federal or state constitutional right to maintain privacy of tax returns in California, courts have interpreted state taxation statutes as creating a statutory privilege against their disclosure. *Weingarten v. Superior Court,* 102 Cal. App. 4th 268, 274 (2002); *Schnabel v. Superior Court,* 5 Cal. 4th 704, 718–21 (1993). However, this privilege is not absolute, and will not be upheld where (1) the circumstances indicate an intentional waiver of the privilege; (2) the gravamen of the lawsuit is inconsistent with the privilege; or (3) a public policy greater than that of the confidentiality of tax returns is involved. *Id.*; *Slojewski v. Allstate Ins.*

*Co.*, 11-CV-03614 PJH NC, 2013 WL 1117142, at *2 (N.D. Cal. Mar. 18, 2013). The party seeking disclosure need only establish one of the grounds set out in *Weingarten* to compel disclosure, and the trial court has broad discretion to determine the applicability of the privilege. *Barrous v. BP P.L.C.*, C 10-02944 LHK PSG, 2011 WL 1431826, at *2 (N.D. Cal. Apr. 14, 2011) (citations omitted).

Disclosure, and therefore intentional waiver, has specifically been found justified despite the assertion of privilege where a plaintiff's complaint places his tax return at issue through an allegation of lost income. *See, e.g.*, *Barrous*, 2011 WL 1431826, at *3–4 (compelling production of tax returns in suit seeking damages for contamination where plaintiffs claimed that but for defendant's conduct they could have received financing to develop their property); *Small v. Travelers Prop. Cas. Co. of Am.,* No. 8–CV–1160, 2010 WL 2523649, at *2 (S.D. Cal. June 21, 2010) (finding the assertion of privilege as to federal and state tax returns inconsistent with plaintiff's insurance claim for loss of income and profits from the destruction of avocado trees due to fire.)

Plaintiffs' allegations regarding damages and lost income present a sufficient basis for compelling the production of the tax returns, though the privilege could also be waived since the damages claims constitute the "gravamen" of Plaintiffs' claim. *See Slojewski*, 2013 WL 1117142, at *2 (insurance claim for lost income inconsistent with the tax return privilege and constitutes sufficient basis for compelling the production of the tax returns.); *Barrous*, 2011 WL 1431826, at *4 (emotional distress claim rendered "the gravamen of the lawsuit is inconsistent with application of the privilege because the documents sought may verify or contradict [the plaintiffs'] damages claim.") *See also Salazar v. Basic*, No. CV 05–283–TUC–FRZ, 2006 WL 3802094, at *5 (D. Ariz. Dec. 22, 2006) (applying California law on privilege to wrongful death lost income claim, court found, under *Weingarten*, that the gravamen of Plaintiffs' lawsuit was inconsistent with maintaining the privilege and ordered Plaintiffs to produce their tax returns if they continued to "proceed with their loss of income claim.")

Plaintiffs' claim that the denial of insurance coverage forced them to enter into an unfavorable settlement that resulted in loss profits and caused Plaintiff Ulises Valdez's emotional

distress, is sufficient to place their financial condition at issue, thereby constituting a waiver of privilege.

3. Privacy

Plaintiffs also object to the requests on privacy grounds. (6/12/13 Joint Letter, at 9.) Like privilege, privacy rights are not absolute. The right of privacy in California extends to financial privacy in litigation, but is "subject to balancing the needs of the litigation with the sensitivity of the information/records sought." *Davis v. Leal*, 43 F. Supp. 2d 1102, 1110 (E.D. Cal.1999) (quoting *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 657 (1975)). This balancing test is underscored by the overall balancing provisions contained within Rule 26(b), which allows the court to limit discovery based on the needs of the case, the importance of the issues at stake, and undue burden. *Pagano v. Oroville Hosp.*, 145 F.R.D. 683, 698 (E.D. Cal. 1993); *Valley Bank of Nevada*, 15 Cal. 3d at 657 ("When an individual's right of privacy in his financial affairs conflicts with the public need for discovery in litigation, the competing interests must be carefully balanced.").

Under California law, the privacy rights of businesses are accorded less weight than that of individuals. *Saca v. J.P. Molyneux Studio Ltd.*, CIV S06-2818 MCE EFB, 2008 WL 62181, at *4 (E.D. Cal. Jan. 4, 2008). Defendants are correct in their assertion that Valdez & Sons cannot raise a privacy claim under the California Constitution because corporations are not included under Article I, § 1's protections. (6/12/13 Joint Letter, at 5); *Roberts v. Gulf Oil Corp.*, 147 Cal. App. 3d 770, 795 (1983); *Zurich American Ins. Co. v. Superior Court*, 155 Cal. App. 4th 1485 (2007). The extent of privacy rights enjoyed by other business entities is less clear, but such rights are much less robust than those enjoyed by individuals. *Saca*, 2008 WL 62181 at *4. *See also Hecht, Solberg, Robinson, Goldberg & Bagley, LLP v. Superior Court*, 137 Cal. App. 4th 579, 594 (2006) (noting weaker rights of business entities and affirming order compelling LLP to produce documents that were otherwise discoverable under relevancy standards).

Plaintiffs made a decision to litigate and seek emotional distress damages on behalf of Ulises Valdez. Generally, a plaintiff's privacy concerns must be balanced against a defendant's need to obtain information so that it may effectively litigate the case, and the "the historically

9

important state interest of facilitating the ascertainment of truth in connection with legal proceedings." *Britt v. Superior Court*, 20 Cal. 3d 844, 857 (1978). The instant case is similar to *Brunsvik v. Hartford Life & Acc. Ins. Co.*, where the court ordered the plaintiff, who was bringing a claim for emotional distress related to a breach of contract and bad faith claim, to produce his financial information because the trier of fact may need to consider the "totality of Plaintiff's financial condition in order to assess the extent of his emotional distress." *Brunsvik v. Hartford Life & Acc. Ins. Co.*, 1:11-CV-00014 AWI, 2011 WL 5838221, at *2-3 (E.D. Cal. Nov. 21, 2011). In light of the above, the Court finds that the appropriate balancing of the Plaintiffs' privacy rights against Defendants' need to effectively evaluate Plaintiffs' claims requires production of the requested documents, because the very nature of Plaintiffs' claims implicates their financial condition.

In recognition of Plaintiffs' privacy concerns, the parties are directed to meet and confer regarding entering into a stipulated protective order regarding the production of Plaintiffs' financial documents. *See Vieste, LLC v. Hill Redwood Dev.*, C-09-04024 JSW DMR, 2011 WL 855831, at *1 (N.D. Cal. Mar. 9, 2011) quoting *Oakes v. Halvorsen Marine Ltd.,* 179 F.R.D. 281, 284 (C.D.Cal.1998) (party's interest in the confidentiality of its financial information can be adequately addressed via a protective order); and *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 38 (1994) ("[P]rivacy concerns" "are assuaged if intrusion is limited and confidential information is carefully shielded from disclosure except to those who have a legitimate need to know."). The parties are directed to the Northern District's model "Stipulated Protective Order for Standard Litigation," available at *http://www.cand.uscourts.gov/stipprotectorder*, to assist them in their meet and confer efforts.

4. <u>Scope</u>

Plaintiffs also object to the scope of the requested documents. (6/12/13 Joint Letter, at 6.) Defendants argue that they need a full picture of Plaintiffs' financial condition in order to defend themselves, and therefore require financial documents ranging from January 1, 2010 to the present. (6/12/13 Joint Letter, at 2; Ex. A.) Since Plaintiffs' financial condition is also relevant for issues of mitigation relative to future damages, the Court finds the time frame for requested

10

documents is appropriate given the closeness in temporality to the date of settlement in the *Ernst* action.

### B. Subpoenas

On June 14, 2013, the parties filed a joint letter concerning the document subpoena Defendants issued to eight third-party entities. On May 9, 2013, Defendants issued subpoenas to seven entities related to Plaintiffs. (6/14/13 Joint Letter, at 1.) On June 11, 2013, Defendants issued amended subpoenas to certain of these entities, and also issued a document subpoena to Umpqua Bank, by which it sought financial records relating to Plaintiffs and the seven, affiliated entities. *Id.*

The subpoenas issued to the Adelina Valdez Trust, Ulises & Adelina Valdez Family Trust and Ulises Valdez Trust request production of federal income tax information from the year of inception through 2012. (6/14/13 Joint Letter, Exs. A, B, E.) The subpoena issued to Valdez Family Winery seeks balance sheets, profit and loss statements for fiscal years 2007 through 2012, and documents referring to or related to wine produced from grapes grown on the subject property from January 1, 2007 through the present. (6/14/13 Joint Letter, Ex. C.) The subpoenas issued to Ulises Valdez Properties, LLC and the Valdez Family Limited Partnership seek balance sheets and profit and loss statements for fiscal years 2007 through 2012 and federal and state income tax returns for fiscal years 2010 through 2012. (6/14/13 Joint Letter, Ex. D, F.)

As was the case with the Requests for Production of Documents, Plaintiffs dispute the relevancy of the documents sought. (6/14/13 Joint Letter, at 1.) They also argue that the scope of the documents is overly broad and claim that production is proscribed by privilege and California's "right of privacy." *See Estate of Gallio v. Conigliaro*, 33 Cal. App. 4th, 592, 598 (1995). As a preliminary matter, the Court notes that the third party entities themselves have not moved to quash, modify or otherwise objected to the subpoenas.

In objecting to the subpoenas on the third party entities, Plaintiffs argue that "Travelers cannot demonstrate a compelling need to wholesale financial discovery into private financial matters of third parties based upon on a claim that those third parties could have provided a means for plaintiffs to defend themselves in the underlying action after Travelers failed to do so." (Joint

Letter, at 10.) Plaintiffs cite *21X Capital, Ltd. v. Werra* in support of their objection. *See* 2008 WL 753907, at *2 (N.D. Cal. Mar. 19, 2008). *21X Capital*, however, is distinguishable, because it only concerned the subpoena of the plaintiff's personal financial records from the plaintiff's bank. *21X Capital, Ltd.*, 2008 WL 753907, at *1. Since the Court finds that the subpoena served on Umpqua Bank is not enforceable under Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure, and Defendants do not seek bank statements from the affiliated entities, it need not determine whether Defendants have demonstrated sufficient need to overcome the privacy afforded to the bank statements. *See Davis v. Sup.Ct. (Williams),* 7 Cal.App.4th 1008, 1017 (1992) (citation omitted).

The Court individually addresses, below, the propriety of the subpoenas issued to Adelina Valdez Trust, Ulises, Adelina Valdez Family Trust, Valdez Family Winery, Ulises Valdez Properties, LLC, Ulises Valdez Trust, the Valdez Family Limited Partnership, Silver Eagle Ranch, LLC, and Umpqua Bank.

1. <u>Adelina Valdez, Ulises Valdez, and Ulises & Adelina Valdez Family Trusts</u>

In the initial, May 9, 2013 subpoenas, Defendants requested federal income tax returns from the Adelina Valdez Trust, the Ulises & Adelina Valdez Family Trust, and the Ulises Valdez Trust. (6/14/13 Joint Letter, Exs. A, B, E.) Defendants argue that these entities were likely established by Ulises Valdez or his wife, Adelina Valdez, to hold assets, and were a possible source of monies that could have been used to pay defense costs in the underlying action at a time when plaintiffs contend they could not afford to defend themselves. (6/14/13 Joint Letter, at 5.) Plaintiffs argue that since neither Adelina Valdez nor the trusts are parties to the litigation, the information is not discoverable. (Joint Letter, at 7.) This argument is not valid as to the trusts that name Ulises Valdez, as he presumably had access to the assets contained therein. In addition, discoverable information is often maintained via third party subpoena.

Though not a party to the litigation, the Defendants contend that the financial information from the Adelina Valdez Trust is relevant to the instant action, because "Travelers has obtained records showing that the Adelina Valdez Trust transferred property to Ulises Valdez, suggesting that the Adelina Valdez Trust may have been used by Ulises Valdez to hold assets that could have

12

been used to pay for the defense of the underlying action." (6/14/13 Joint Letter, at 5.) As a result, the financial information for the Adelina Valdez Trust is not only relevant, but necessary for Defendants to have a complete picture of Plaintiffs' financial condition.

Also, as discussed at length in regards to the documents requested by Defendants in the June 12, 2013 Joint Letter, the subpoenaed documents are not protected by privilege or privacy rights, because they relate to the "gravamen" of Plaintiffs' claims and Defendants' potential defenses. *See* discussion *supra* Part III.A; *see also Weingarten*, 102 Cal. App. 4th at 274. Further, as discussed above, those third parties have not moved to quash the subpoenas, and Plaintiffs have placed their financial condition at issue by filing claims of lost income, and other consequential damages related to the *Ernst* litigation, resulting in a waiver of privilege. *Id.*

The Court finds that the Adelina Valdez, Ulises Valdez, and Ulises & Adelina Valdez Family Trusts to have been properly subpoenaed as affiliated, third-party entities.

2. <u>Valdez Family Winery and Ulises Valdez Properties, LLC</u>

Valdez Family Winery is a corporation which, according to Defendants, is owned and operated by Ulises Valdez. (6/14/13 Joint Letter, at 3.) This assertion is based on Travelers' research and documents produced by Plaintiffs in this case. *Id.* Ulises Valdez Properties, LLC, is a limited liability company which, according to Travelers' research, has Ulises Valdez and Adelina Valdez as its members. *Id.* Defendants contend, and Plaintiffs do not dispute, that these entities paid Plaintiffs' attorneys' fees in the underlying action. *Id.*

In addition, Plaintiffs have produced invoices issued by both Valdez Family Winery and Ulises Valdez Properties in support of their lost profits claim, which puts the finances of both entities at issue. (6/14/13 Joint Letter, at 3.) Further, Defendants contend that

> Ulises Valdez Properties, LLC was listed as an "optionee" on a May 15, 2009 option agreement pertaining to the property at issue in the underlying action, indicating that Ulises Valdez Properties, LLC may have received a portion of the profits derived from the sale of grapes on the property, meaning that Ulises Valdez Properties, LLC may have financial information relevant to plaintiffs' lost profits claim.

(6/14/13 Joint Letter, at 3.)

///

1          Plaintiffs' argument against the enforcement of the subpoenas is that "None of these
2  business entities are parties in the present case" and then they object on privilege and privacy
3  grounds. (6/14/13 Joint Letter, at 7-10.)  First, as provided above, business entities are afforded
4  fewer privacy protections than individuals.  Second, these business entities paid legal fees in the
5  *Ernst* action, and Plaintiffs have already produced invoices from both in support of their lost
6  profits claim in the instant action, so Defendants are entitled to a complete financial picture from
7  which to fashion a legal defense.
8          Financial information from the Valdez Family Winery and Ulises Valdez Properties, LLC
9  is therefore relevant to Plaintiffs' claim for lost earnings, and must be produced.

### 3. Valdez Family Limited Partnership

Defendants seek financial information from the Valdez Family Limited Partnership. Defendants allege that the entity's sole member is Ulises Valdez Properties, LLC, above, and that the Plaintiffs may have used funds from this entity to defend themselves in the *Ernst* litigation. (6/14/13 Joint Letter, at 3.)  Since the Valdez Family Limited Partnership's membership consists exclusively of Ulises Valdez Properties, LLC—which was a source of attorney's fees in the underlying lawsuit, an optionee in the May 15, 2009 option agreement pertaining to the subject property, and has produced invoices in support of Plaintiffs' lost profits claim— this financial information is relevant.  As a result, Valdez Family Limited Partnership cannot properly object on privilege or privacy grounds to prevent the disclosure of the documents requested.

### 4. Silver Eagle Ranch, LLC

Defendants assert that they require Silver Eagle Ranch, LLC's financial documents because it is "one of Ulises Valdez's enterprises," "he is a member," and that he "could have turned there for funds to pay legal expenses." (6/14/13 Joint Letter 2, at 4.)  Unlike the other business entities described above, there is no indication that Silver Eagle Ranch was affiliated with the underlying action or that Ulises Valdez has an ownership interest that would allow him to unilaterally access funds, so this request is denied without prejudice.  Should Defendants obtain information suggesting that relevancy outweighs any claims of privilege, privacy, or the resulting

burden imposed by the subpoena, the parties shall meet and confer regarding production and only seek court intervention if they are unable to resolve this issue on their own.

5. <u>Umpqua Bank</u>

In determining whether the subpoena should be enforced, the Court is guided not only by Rule 45, which protects subpoenaed parties from "undue burden," but also Rule 26, which provides, *inter alia*, that a court may limit discovery if "the discovery sought...is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). Here, the discovery sought from Umpqua is obtainable from a source more direct, convenient, and less burdensome—namely, from Plaintiffs. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("no reason to burden nonparties when the documents sought are in possession of the party defendant"). The Court therefore directs Defendants to obtain this information from the Plaintiffs, who have possession, custody, or control of all bank statements, as they have the ability to obtain all documents directly from Umpqua Bank. Should Defendant seek bank statements from the third party entities, it should subpoena them directly from the affiliated entity. If Defendants find that the financial documents produced are incomplete, the parties shall meet and confer in an effort to resolve any remaining disputes prior to seeking further court intervention.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that Plaintiffs have put their financial condition at issue in this litigation and orders Ulises Valdez to amend his responses to Requests for Production 21-37, and Valdez & Sons to amend its responses to Requests for Production Nos. 21-27. Both Plaintiffs shall serve their respective amended responses within 14 days of this order.

///

///

///

///

///

15

The Court finds that the third party subpoenas issued to the Adelina Valdez Trust, the Ulises Valdez Trust, the Ulises & Adelina Valdez Family Trust, Valdez Family Winery, Ulises Valdez Properties, LLC, and Valdez Family Limited Partnership seek discoverable information, and those third party entities shall produce the requested documents within 21 days of this order.

The subpoenas issued to Silver Eagle Ranch and Umpqua Bank are quashed.

IT IS SO ORDERED.

Dated:  August 2, 2013

KANDIS A. WESTMORE
United States Magistrate Judge